## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Monty Lee Hightower, on behalf of himself and
others similarly situated,

        Plaintiff,

    vs.

AlertzPro, LLC

       Defendant.

Case No. 8:25-cv-02312-DKC

**Plaintiff's Response in Opposition To**
**<u>Defendant's Motion To Stay and Compel Arbitration</u>**

# I.   INTRODUCTION

Defendant has moved to compel arbitration based on a purported website visit and consent to a so-called clickwrap agreement found on the website the classactionguide.com. Defendant says that Plaintiff visited theclassactionguide.com on April 21, 2025, submitted his personal information (including his telephone number), and checked a box consenting to receive text messages from "third-party marketing partners like AlertzPro." ECF No. 15-1 at 3. Thus AlertzPro argues that by visiting theclassactionguide.com and checking certain boxes, Hightower consented to receive telemarketing. ECF No. 15-2 a¶¶ 29-31.  But Plaintiff has never heard of the website theclassactionguide.com—let alone visited the website. After AlertzPro filed this motion, Plaintiff reviewed his browser history and confirmed what he already knew: he never visited theclassactionguide.com. Notably, although AlertzPro claims that it regularly captures and "this kind of data" it does not claim to have personally reviewed the consent data pertaining to Mr. Hightower and thus does not have firsthand knowledge of whether Hightower consented. Hightower does, and he did not consent to receive telemarketing or agree to arbitrate. For these reasons, AlertzPro's motion should be denied.

# II.   BACKGROUND

This case concerns text messages that the Plaintiff never consented to and asked to stop, and which were therefore made in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA") by the Defendant to market various goods and services. Defendant seeks to avoid this lawsuit by compelling arbitration based on the allegation that the Plaintiff submitted his telephone number on a third party website: theclassactionguide.com. In support of its motion to compel arbitration, Defendant has submitted supplementary materials, whereby it contends that Plaintiff, submitted his phone number and agreed to arbitrate his claims

1

against Defendant. But Plaintiff has submitted a sworn declaration stating that he never visited theclassactionguide.com, had no notice of any arbitration provision, and certainly did not agree to arbitrate any claims. In sum, Mr. Hightower had no knowledge of, never agreed to, and would never agree to, arbitrate his claims against AlertzPro. AlertzPro, by contrast, has not confirmed that it personally reviewed the purported consent data. Although it talks extensively about what a consumer would do upon visiting theclassactionguide.com and says it regularly reviews "this kind of data" it does not claim to have personally reviewed the purported consent data relevant to Mr. Hightower. ECF No. 15-3 ¶¶10-27, 32. Furthermore AlertzPro makes extensive claims about what Hightower purportedly did (visited a website, agreed to terms and conditions, provided his email, phone number, city of residence, and date of birth; ECF 15-3 ¶¶ 9, 29-30). Of course, no one at AlertzPro personally observed Hightower visit any websites or agree to any clickwrap. Hightower, by contrast, has personal knowledge of his own actions, and documentary evidence confirming that he never visited theclassactionguide.com or consented to arbitration.

### III.    LEGAL STANDARD

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq*., governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"). That issue is for the court, not the arbitrator, to decide, even when there is a valid delegation provision. here is a difference between disputes over arbitrability and disputes over contract formation. *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) (court has "obligation to determine whether a contract was formed under 9 U.S.C. § 4" and resolve "the threshold issue of contract formation"). When a motion to compel

arbitration is brought by a party, courts must first determine whether the parties agreed to arbitrate. *Id.*. If the record shows a material issue of fact on whether the parties had an agreement to arbitrate the party resisting arbitration is entitled to a jury trial.) *Davis v. TMC Rest. of Charlotte, LLC*, 854 F. App'x 518, 519-20 (4th Cir. 2021). The party seeking to compel arbitration bears the burden of proving a valid agreement to arbitrate. *Wilson v. Huuuge, Inc.,* 944 F.3d 1212, 1219 (9th Cir. 2019). And "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.,* 656 F.2d 933, 939 (4th Cir. 1981) (en banc).

### Argument

A.     *There is no agreement to arbitrate because the Plaintiff has provided evidence that he never visited the website and thus never agreed to arbitrate.*

"Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). The Supreme Court has held time and time again that, despite the liberal policy favoring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* The Supreme Court has held time and time again that, despite the liberal policy favoring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Id.* Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* Defendant cannot invoke any arbitration clause against Mr. Baldwin because the factual question of whether the Plaintiff even agreed as a matter of contract is called into issue, as Mr. Hightower's declaration points out that he never visited theclassactionguide.com and the information Defendant contends was submitted

was not submitted by him. Under Section 4 of the Federal Arbitration Act, a jury *must* decide this as a threshold to the threshold arbitrability matter, and jurisdiction lies with the Court on this issue, as confirmed by the Supreme Court in *Coinbase*, *infra*.

As the party seeking to arbitrate, Defendant bears the burden of demonstrating, at the same level as at summary judgment, *both* that legally valid arbitration agreement exists and that the *Plaintiff himself* agreed to be bound by the clause of which he had adequate legal notice. *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.,* 656 F.2d 933, 939 (4th Cir. 1981) (en banc). Both points which will be addressed below.

The Supreme Court recently addressed the proper procedure to follow when conflicts arise as to the existence of arbitration contracts. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143 (2024). The Supreme Court held that the first question in any arbitration dispute must be what the parties agreed to. *Id.* at 145. The Supreme Court clarified that *this* "fundamental" question is one for the *court*, not the arbitrator, to decide, and is driven by contractual interpretation principles under state contract law. *Id.* In *Coinbase*, the Supreme Court reaffirmed that "where, as here, a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a *court* must address that challenge." *Id.* at 151 (*quoting Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 71 (2010). The Court went on to explain that in such cases, just like here, "basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 71 for the proposition that "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement."). And the explicit text of Section 4 makes it clear that formation is a *jury* issue, "upon

4

such demand the court shall . . . specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." 9 U.S.C. § 4. As such, a jury trial is necessary to ascertain if the Plaintiff himself submitted his information to theclassactionguide.com and thus agreed to arbitrate, as the evidence in support of this is dispu

"It goes without saying that a contract cannot bind a nonparty." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002). Thus the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The FAA commands that, before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). And, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

Under Maryland law, the party arguing the existence of a valid contract bears the burden of proving the contract existed and was formed, and that the *Plaintiff himself* agreed to be bound by the clause. *Parlette v. Parlette*, 88 Md. App. 628, 640, 596 A.2d 665 (Ct. Spec. App. 1991) ("In order to recover on a breach of contract claim, a plaintiff must prove that two or more parties formed a contract, that the defendant breached the contract, and that the plaintiff suffered actual damages as a result of the breach." As the party seeking to arbitrate, the Defendant bears the burden of demonstrating, at the same level as at summary judgment, not only that a valid arbitration agreement exists but also that the *Plaintiff himself* agreed to be bound by the clause. *See Campbell*

*v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). Defendant will be unable

to do so because the Plaintiff denies ever having submitted his information. And Defendant has

presented no other information or evidence to show that Mr. Hightower *himself* visited the website

in question or submitted any information at all. All the information the Defendant has is outlined

below:

| Allegation | Truth |
| --- | --- |
| Plaintiff submitted his name on theclassactionguide.com | Plaintiff has never seen theclassactionguide.com before filing |
| Plaintiff provided his email address to the classactionguide.com | Plaintiff never provided his email to theclassactionguide.com |
| Plaintiff submitted his phone number | Plaintiff never submitted his phone number to theclassactionguide.com |
| Plaintiff provided his date of birth: | Plaintiff never entered information of any kind on the website alleged |

Hightower Declaration ¶5.

Because Hightower never submitted this information to Defendant directly or indirectly,

he never consented to arbitrate his claims. At this stage, particularly as this case raises a factual

challenge surrounding contract formation, the Plaintiff is entitled to submit a declaration of his

own in support of his position that he did not agree to arbitrate the dispute as an initial matter.

*Gerrish v. Coast Pump & Supply Co.*, No. 8:21-cv-365-JSS, 2021 U.S. Dist. LEXIS 202979, at

*2-4 (M.D. Fla. Oct. 21, 2021).

To be clear, Plaintiff denies ever having agreed to arbitrate. Plaintiff confirms that he did

not visit the theclassactionguide.com, had nothing to do with the purported website visit, and thus

did not agree to arbitrate anything. (Hightower Dec. ¶¶ 5-6). These factual disputes create issues

of material fact and entitle Plaintiff to a jury trial on the question of whether the parties agreed to

arbitrate. Despite Defendant's faulty evidence which demonstrates that it possesses no information

that the Plaintiff himself, and not something like a website scraper or bot, submitted Plaintiff's

information, and the Plaintiff's own denials, Defendant's motion is rife with the false and unsupported assertion that the "Plaintiff" submitted *his* phone number to the website in question. But, under well-established TCPA and arbitration law, the Defendant must establish that the Plaintiff *himself*, and not someone else, agreed to arbitrate claims. *Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501, at *5 (D. Mass. Mar. 25, 2024) (denying motion to compel arbitration and holding non-signatory family member was not bound by arbitration agreement despite being listed as an alternate contact on account).

Several decisions dictate that the Defendant's motion ought to be denied on the basis of the Plaintiff's declaration *alone*. The Middle District of Georgia's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive. There, a TCPA defendant sought to compel arbitration by contending, as here, that the plaintiff agreed to an arbitration provision as a result of his visits to the defendant's website. In finding no agreement to arbitrate existed, the court explained:

> Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. . . . Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did not visit www.bestautoinsurance.com." From this, a reasonable factfinder could determine that Plaintiff did not enter his personal information on Defendant's website or click "submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

*Id.* at *1-*2 (cleaned up). *Hobbs* is one of several in a long line of cases either denying such motions outright or ultimately concluding that a summary arbitration trial was necessary. *E.g.*, *Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545, at *4 (M.D. Tenn. Apr. 16, 2025 ("[O]ther than the fact that Plaintiff's name and phone number were used, Prince

Health offers no evidence that Plaintiff was the person who entered the information."); *Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803, at *3 (N.D. Ill. Sept. 20, 2024).

The Court in *Conrad v. Camping World Holdings Inc.* reached a similar conclusion, reasoning that the factual question of whether the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied a similar motion to compel arbitration. No. 4:24-CV-171-CLM, 2025 WL 66689, at *2 (N.D. Ala. Jan. 9, 2025). There, the court first agreed that its decision "as to whether an arbitration agreement exists is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not agree to arbitrate any claims because he did not own the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.*

As a result, Defendant has been and will be unable to meet its burden of demonstrating even a genuine issue entitling the Plaintiff to wholesale denial of the motion. The court in *Conrad* did the same, holding as a matter of law that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to justify an arbitration trial. *Id.* And, like in *Hobbs*, the Plaintiff has made similar allegations of faulty arbitrational facts, including his physical location and other mismatched information. 2019 WL 6878863, at *1–*2. And because the Plaintiff agreed to nothing, he did not agree to arbitrate or receive calls.

B.  *Maryland law governs this dispute.*

Although this case arises under federal question jurisdiction, the enforceability of an arbitration agreement is governed by the Federal Arbitration Act ("FAA") together with generally applicable state contract principles. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996). The FAA does not supply substantive rules of contract law; instead, courts apply state law to determine whether an agreement was validly formed or is unenforceable on grounds such as unconscionability. The question, therefore, is which state's contract law governs the arbitration provision at issue.

In federal question cases, courts apply federal common law choice-of-law rules. Those rules incorporate the Restatement (Second) of Conflict of Laws, which looks to (1) whether the chosen law bears a substantial relationship to the parties or transaction, and (2) whether applying that law would contravene the fundamental policy of a state with a materially greater interest in the issue. See *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006); *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993). District courts within the Fourth Circuit apply the same Restatement framework.

Applying that test here, Maryland law governs. First, New York has no substantial relationship to the parties or the transaction. Defendant is based in Maryland.  Nothing in the record suggests that the arbitration agreement was negotiated, executed, or performed in New York. Nor are Defendants headquartered there. Instead, the Terms and Conditions simply inserted "New York law" as governing law in a form contract offered nationwide. Such a boilerplate clause does not establish the substantial relationship or reasonable basis required by Restatement § 187(2)(a).

Second, even if a tenuous connection to New York could be hypothesized, applying New York law would contravene Maryland's fundamental policy. Maryland requires that an arbitration provision rest on genuine mutual consideration and not operate as an illusory promise. *Cheek v. United Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 146–58 (2003); *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 610–13 (4th Cir. 2013). Those decisions reflect a core principle of Maryland contract law: arbitration agreements are enforceable only if they meet baseline fairness standards. If Defendants were permitted to invoke New York law to evade these settled Maryland requirements, the result would undercut Maryland's fundamental policy in a case with strong ties to this state.

C. *The purported agreement to arbitrate is legally defective.*

An arbitration clause is enforceable only if it creates binding obligations on both sides. *Cheek v. United Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 149–50, 835 A.2d 656, 662–63 (2003). Where one party reserves the unilateral right to alter or revoke its obligation, the promise to arbitrate is "illusory" and therefore not valid consideration. *Id.* An "illusory promise" appears to be a promise, but it does not actually bind or obligate the promisor to anything. An illusory promise is composed of "words in a promissory form that promise nothing." Corbin on Contracts § 5.28 (2003). "They do not purport to put any limitation on the freedom of the alleged promisor. If A makes an illusory promise, A's words leave A's future action subject to A's own future whim, just as it would have been had A said nothing at all." Id. Similarly, the Restatement of Contracts explains that "words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise." Restatement of Contracts 2d § 2 cmt. e. Likewise, "the promise is too indefinite for legal enforcement is the promise where the promisor retains an unlimited right to

10

decide later the nature or extent of his performance. The unlimited choice in effect destroys the p*romise and makes it merely illusory." 1 Samuel Williston, Contracts, § 4:24 (4th Ed. 1990).*

The federal appellate courts agree. An alleged contract whose terms can change at a later time based on unilateral action of one party is a text-book definition of an illusory contract. See Nat'l Fed'n of the Blind v. Container Store, Inc., 904 F.3d 70, 86- 87 (1st Cir. 2018). If illusory, there can be no valid agreement to arbitrate. Id.; see also Starke, 913 F.3d at 296 ("the terms and conditions in the email did not contain an arbitration provision, so that transaction could not have put [plaintiff] on notice of such [arbitration] provision").In *Floss v. Ryan's Family Steak Houses, Inc.*, the Sixth Circuit invalidated an arbitration agreement because the arbitration provider retained "the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from" the consumer. 211 F.3d 306, 315–16 (6th Cir. 2000). Because the provider's promise was entirely discretionary, the agreement was unenforceable for lack of consideration. *Id.* at 316. The Seventh Circuit reached the same result in *Penn v. Ryan's Family Steak Houses, Inc.*, holding that an arbitration clause was illusory where the drafter had sole power to amend its terms. 269 F.3d 753, 761 (7th Cir. 2001). Likewise, in *Dumais v. American Golf Corp.*, the Tenth Circuit refused to compel arbitration because the employer reserved the unilateral right to revoke or amend the arbitration provision, rendering the agreement "illusory." 299 F.3d 1216, 1220 (10th Cir. 2002).

*Cheek* expressly aligned itself with these federal decisions, concluding that an arbitration clause must rise or fall on its own reciprocal promises, not on the broader contractual relationship. 378 Md. at 150–52, 835 A.2d at 663–64. The rule applies with full force here:

11

Defendants cannot compel arbitration under a provision that imposes binding obligations on consumers but leaves Defendants free to abandon their own commitment.

Even if New York law does apply (it does not), the purported agreement to arbitrate is still unenforceable. Because arbitration is a matter of contract, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); see also FAA § 2 (providing arbitration clauses in commercial contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist in equity for the revocation of any contract" (emphasis added)). "Courts do not enforce terms of agreements that are unconscionable." Berkson, 97 F. Supp. 3d at 391 (citing 22 N.Y. Jur. 2d Contracts § 2 (2015)). "[C]ourts evaluate procedural and substantive unconscionability on a 'sliding scale.'" *Id.*; *see also Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y. 2017). "New York law allows for a finding of unconscionability . . . even where there was no procedural unconscionability." *Eisen*, 244 F. Supp. 3d at 342 (citing *Gillman v. Chase Manhattan Bank*, N.A., 534 N.E.2d 824, 829 (N.Y. 1988)). Under New York law, an arbitration agreement is unenforceable if it allows one party to change the terms unilaterally without providing reasonable notice to the other party. In *Bassett v. Electronic Arts, Inc.*, 93 F. Supp. 95, 107 (E.D.N.Y. 2015), the court explained that "the analysis of whether a unilateral right to modify an arbitration agreement renders that agreement illusory and unenforceable turns on reasonableness and fair notice." That principle governs here. The dispositive question is whether the purported agreement to arbitrate gave Defendant the right to modify the contract unilaterally and without notice. Here, the purported agreement to arbitrate gives the Class Action Guide the unilateral right to modify the agreement without providing notice to consumers. ECF No. 15-2 at 14. Thus the purported agreement does not bind the Class Action

12

Guide in any meaningful way and is therefore illusory. AlertzPro cannot, as a third party beneficiary, enforce an illusory contract. "An intended third-party beneficiary possesses no greater right to enforce a contract than the actual parties to the contract." *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 1994 U.S. Dist. LEXIS 363, at *40–41 (S.D.N.Y. Jan. 17, 1994) (applying New York law) (citing *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir. 1993); *Dunning v. Leavitt*, 85 N.Y. 30, 35 (1881)). See also the Second Circuit's formulation (quoting the New York Court of Appeals): a third-party beneficiary cannot "acquire a better right against the promisor than the promisee himself had." *BAII Banking*, 985 F.2d at 697 (quoting *Dunning*, 85 N.Y. at 35). Because the arbitration clause is illusory and unsupported by consideration, it is unenforceable as a matter of law. Plaintiff cannot be forced into arbitration under an agreement that, by its own terms, binds only one side.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay and Compel Arbitration should be denied.

| Dated: September 30, 2025 | Respectfully Submitted: |
|---|---|
| | */s Anthony I. Paronich*<br><br>Anthony Paronich<br>PARONICH LAW, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043<br>anthony@paronichlaw.com<br>(617) 485-0018 |