IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**MONTY LEE HIGHTOWER**, *individually, and on behalf of all others similarly situated*,

   Plaintiff,

v.

**ALERTZPRO LLC**,

   Defendant.

Case No. 8:25-cv-02312-DKC

## ALERTZPRO'S REPLY IN SUPPORT OF ITS MOTION TO STAY AND COMPEL ARBITRATION

Defendant AlertzPro LLC ("AlertzPro"), through counsel and pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.*, respectfully submits this Reply in Support of its Motion to Stay and Compel Arbitration ("Motion"), Dkt. No. 15.

### I.   Introduction

On April 21, 2025, Plaintiff visited The Class Action Guide's website and voluntarily agreed to its Terms, which contained an arbitration agreement. As part of that sign-up process, he provided his name, telephone number, date of birth, email address, and city and state of residence. Now Plaintiff seeks to avoid his agreement by submitting a declaration in which he claims, without any corroborating evidence, that someone else must have visited The Class Action Guide's Terms and accurately provided his personal information. But Plaintiff's bald denial is insufficient to avoid his claims being compelled to arbitration.

Plaintiff then resorts to claiming that the Terms are an illusory promise under Maryland law. But that argument also fails because (1) Maryland law is not applicable to the Terms, (2) the Terms are legal and enforceable under New York law (the Terms' choice of law), and (3) even under Alabama law (Plaintiff resides in Alabama and agreed to the Terms there), whether an

arbitration agreement constitutes an illusory promise is an issue for the arbitrator, not a Court. Thus, this Court should grant AlertzPro's Motion, compel Plaintiff's claims to arbitration pursuant to the Terms, and stay this case pending the completion of arbitration.

## II.     AlertzPro Provided Sufficient Evidence of Plaintiff's Agreement to Arbitrate.

Plaintiff mistakenly claims that AlertzPro has not provided sufficient evidence that Plaintiff agreed to The Class Action Guide's Terms. *See* Opposition to Defendant's Motion to Compel Arbitration ("Opposition"), Dkt. No. 20. He argues that AlertzPro's evidence is insufficient because AlertzPro "does not claim to have personally reviewed the consent data pertaining to Mr. Hightower and thus does not have firsthand knowledge of whether Hightower consented" to the Terms. Opp'n at 1. But Plaintiff's attack ignores that The Class Action Guide conveys such opt-in data to AlertzPro in real time in the ordinary course of business, and that AlertzPro likewise maintains that consumer opt-in data "in the ordinary course of business and [] routinely access[es] and use[s]" such data as part of its routine business operations. Declaration of Blaine Beichler, Dkt. No. 15-2, ¶ 32. Thus, AlertzPro's witness clearly reviewed that data, which the company receives in the ordinary course.  Plaintiff surely cannot be claiming that, in a world dominated by electronic transactions, only those personally witnessed *in real time* are enforceable.  Some of us buy groceries online, while others still prefer to pick our own produce, but both types of transactions are equally enforceable, even if no human at Instacart manually views the zeros and ones pouring in when customers place their orders.

Plaintiff cites *Gilliam v. Prince Health Grp., LLC*, NO. 1:24-cv-00033, 2025 U.S. Dist. LEXIS 72328 (M.D. Tenn. Apr. 16, 2025). *See* Opp'n at 7. But Plaintiff finds no support there. In *Gillam*, the court held that the TCPA defendant did not meet its initial burden of showing the existence of a valid arbitration agreement by simply providing evidence that the plaintiff's name

and telephone number were submitted to the relevant company, because the plaintiff disputed the accuracy of the provided email address and date of birth, calling into reasonable doubt whether it was in fact the Plaintiff who failed to accurately recite those basic facts about his personal information. 2025 U.S. Dist. LEXIS 72328, at *4, *11. Here, however, AlertzPro has submitted far more than that, as detailed in Mr. Beichler's declaration. AlertzPro showed the step-by-step process Plaintiff followed, and the various data Plaintiff provided to The Class Action Guide (including his date of birth, email address, and city and state of residence, none of which he claims is inaccurate) as part of the online agreement process. AlertzPro has clearly met its burden of establishing that Plaintiff agreed to the Terms and to arbitrate his claims.

### III.     Plaintiff Failed to Sufficiently Refute his Agreement to Arbitrate.

Faced with sufficient evidence that he agreed to arbitrate his claims, Plaintiff futilely attempts to dispute that evidence through a conclusory declaration unsupported by any corroborating evidence. Plaintiff simply denies that he was the person who submitted his personal information—the accuracy of which he concedes—and agreed to The Class Action Guide's Terms. But "an unequivocal denial that [an] agreement [to arbitrate] has been made" must be supported by corroborating evidence that "substantiate[s] the denial." *Drews Distrib. v. Silicon Gaming, Inc.,* 245 F.3d 347, 352 n.3 (4th Cir. 2001) (quoting *Doctor's Assoc. v. Stuart*, 85 F.3d 975, 984 (2d Cir. 1996)). Thus, Plaintiff's unsubstantiated denial is insufficient to overcome the substantial, admissible evidence in AlertzPro's Motion demonstrating that Plaintiff was the one who submitted his information, including his telephone number, to The Class Action Guide and agreed to its Terms on April 21, 2025.

The cases Plaintiff cites in his Opposition, *see* Opp'n at 6-8, also show his declaration's inadequacies. Plaintiff cites *Gerrish v. Coast Pump & Supply Co.*, Case No: 8:21-cv-365-JSS,

3

2021 U.S. Dist. LEXIS 202979 (M.D. Fla. Oct. 21, 2021), and *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 U.S. Dist. LEXIS 216357 (M.D. Ga. Dec. 17, 2019). *See* Opp'n at 6, 7. In *Gerrish*, in support of his argument that he did not agree to the relevant arbitration agreements, the plaintiff submitted "several documents 'to show that his true signature'" differed from those on the arbitration agreements. 2021 U.S. Dist. LEXIS 202979, at *2. In *Hobbs*, the plaintiff provided corroborating, third-party evidence showing that he was far from the location of the captured IP address when the defendant obtained his alleged consent. 2019 U.S. Dist. LEXIS 216357, at *4-5. But here, Plaintiff provides no such evidence. *Gerrish* and *Hobbs* show that a perfunctory "not me" is not enough to avoid enforcement of the parties' agreement.

Plaintiff's denial is based solely on his claim that he "reviewed [his] internet browser history and confirmed that [he] never visited theclassactionguide.com." Declaration of Monty Lee Hightower, Dkt. No. 20-1, ¶ 7.[1] But Plaintiff provides no details about why that alleged inquiry would have revealed his visit to theclassactionguide.com on April 21, 2025. He makes no mention of which devices he used to access the Internet that day, whether he still has those devices, whether he reviewed all such devices' history, whether he uses private-browsing modes or browsers, or whether he even kept or deleted his browsing history since that date. Unlike the corroborating evidence in *Gerrish* and *Hobbs*, here, Plaintiff's question-begging internet-history claim is woefully insufficient to serve as a basis to deny AlertzPro's Motion.

Plaintiff also cites *Conrad v. Camping World Holdings Inc.*, Case No. 4:24-cv-171-CLM, 2025 U.S. Dist. LEXIS 6373 (N.D. Ala. Jan. 9, 2025). *See* Opp'n at 8. But *Conrad* is inapposite here. There, the plaintiff provided evidence that the relevant telephone number was not his when

---

[1] Plaintiff's Declaration does not appear to be signed in accordance with any of the three options under the Court's Rules. *See* Electronic Case Filing Policies and Procedure Manual, at 40, § 8(b) (Sept. 2025).

4

it was provided to the defendant. 2025 U.S. Dist. LEXIS 6373, at *5-6. But here, Plaintiff admits that the telephone number at issue was his when he provided it to The Class Action Guide. *See* Complaint, Dkt. No. 1, ¶ 7 ("Plaintiff is, and since March 23, 2025, the subscriber and customary user of cellular telephone number–(850) 866-XXXX.").

Finally, Plaintiff's reliance on *Woodard v. Smartmatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 U.S. Dist. LEXIS 170174 (N.D. Ill. Sept. 20, 2024) is misplaced. *See* Opp'n at 8. There, the plaintiff's evidence directly contradicted the defendant's evidence about the type of device that was used to enter into the arbitration agreement at issue—"a Samsung Android—not an iPhone." *Woodard*, 2024 U.S. Dist. LEXIS 170174, at *2, *5-6. Here, Plaintiff has provided no such contradictory evidence.

The other statements in Plaintiff's declaration provide no more basis for precluding his claims from being compelled to arbitration than the cases he cites. For example, Plaintiff claims that "[t]o the best of my knowledge and after reviewing my browser history, I have never heard of, visited, or used the website 'theclassactionguide.com.'" Hightower Decl. ¶ 4. But in that statement, Plaintiff is just saying he doesn't recall visiting theclassactionguide.com. That is not an unequivocal denial and thus, not enough to create a material issue of fact. *See Hernandez v. RNC Indus., LLC*, 21-CV-04518 (JS)(ST), 2024 U.S. Dist. LEXIS 39528, at *6 (E.D.N.Y. Mar. 6, 2024) ("When a party merely states that []he cannot recall signing an agreement (as opposed to denying that []he has done so), such a declaration ordinarily fails to create a triable issue of fact." (quoting *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 49 (2d Cir. 2022))).

These inadequacies leave Plaintiff with a legally insufficient denial of his clear agreement to The Class Action Guide's Terms. Given Plaintiff's failure to make an unequivocal denial that is substantiated by corroborating evidence, this Court should find that Plaintiff agreed to the

5

Arbitration Agreement.[2]

## IV. The Arbitration Agreement is Legal and Enforceable Under Both New York and Alabama Law.

Despite agreeing to The Class Action Guide's Terms, Plaintiff attempts to avoid his agreement by arguing that the Terms are unenforceable under Maryland law. Plaintiff's argument fails because (1) Maryland law is not the applicable law for determining the legality and enforceability of the Terms and (2) under the applicable law, the Terms are legal and enforceable.

### A. The Arbitration Agreement is Governed by New York or Alabama Law, Not Maryland Law.

In a federal-question case that incorporates a state-law issue, such as contract formation, a federal district court applies "the choice-of-law rules of the state in which it sits." *Philpot v. Indep. J. Review*, 92 F.4th 252, 264 (4th Cir. 2024) (citations omitted). Under Maryland law, it is "generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *Choice Hotels Int'l, Inc. v. Chewl;s Hosp., Inc.*, 91 F. Appx 810, 814-15 (4th Cir. 2003) (citing *General Ins. Co. of Am. v. Interstate Serv. Co., Inc.*, 118 Md. App. 126, 137 (1997)). A contractual choice-of-law provision can thereafter be defeated

> if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties[,]"

---

[2] If the Court finds that Plaintiff has met his burden, which he has not, AlertzPro agrees that an evidentiary hearing or "jury trial is necessary to ascertain if Plaintiff himself submitted his information to theclassactionguide.com and thus agreed to arbitrate[.]" Opp'n at 5. But AlertzPro requests that it be permitted to conduct limited discovery on the formation issue before such evidentiary hearing or jury trial.

a test which is closely related to but ultimately distinct from the Restatement (Second) of Conflict of Laws § 187(2) test that Plaintiff cites.[3] *Choice Hotels Int'l, Inc.*, 91 F. Appx. at 815 (citing *General Ins. Co. of Am.*, 118 Md. App. at 137); *see also* Opp'n at 9 (citing Restatement (Second) of Conflict of Laws § 187(2)).

### 1. There is a Reasonable Basis for the New York Choice-of-Law Provision.

Applying the Maryland choice-of-law test here, New York law governs the Terms. As AlertzPro is a third-party beneficiary to the Arbitration Agreement, Plaintiff's argument that AlertzPro "is based in Maryland" and is not "headquartered there" is irrelevant to the determination of whether New York has a relation to the parties to the Arbitration Agreement or to the transaction. *Id*. at 9. The transaction at issue is Plaintiff's agreement to The Class Action Guide's Terms and the Arbitration Agreement therein, which What If Media Group, LLC developed and maintains, and processes the consumer data it collects, from its office located at 27 West 24th Street, Suite 402, New York, New York 10010. *See* Declaration of Holden Collick, attached hereto as **Exhibit A**, at ¶¶ 3-5.  Thus, there was clearly a reasonable basis for What If Media Group, LLC to select New York law for its collection and distribution of consumer data collected via its Class Action Guide site.  Further, this Court has noted that the choice of New York law to govern an agreement is reasonable when the agreement, like the Terms here, is intended "for use across the United States," even when the parties and the transaction do not

---

[3] Importantly, despite the similarities between the tests, the Maryland Supreme Court has expressly disavowed the "most significant relationship" test as set forth in Restatement (Second) Conflict of Laws § 188 and referenced in § 187(2)(b).  *See EnviroAnalytics Grp. LLC v. Axis Surplus Ins. Co.*, Civ. No. JKB-24-2970, 2025 U.S. Dist. LEXIS 98226, at *52 n.22 (D. Md. May 13, 2025) (citing Restatement (Second) of Conflict of Laws § 188(1)). Therefore, the state of the applicable law in the absence of an effective choice of law by the parties is Alabama, not Maryland. *See infra* Section IV(A)(2).

have a particular connection to New York.[4]  *EnviroAnalytics Grp.*, 2025 U.S. Dist. LEXIS 98226, at *59-60.

### 2. Alabama Law is the Applicable Law to the Terms in the Absence of an Effective Choice of Law by the Parties—not Maryland law.

In further attempting to improperly apply Maryland law to the Terms, Plaintiff argues that "applying New York law would contravene Maryland's fundamental policy . . . that an arbitration provision rest on genuine mutual consideration and not operate as an illusory promise," relying on the test set forth in the Restatement (Second) of Conflict of Laws § 187(2)(b). Opp'n 10. But the second potential avenue for invalidating a choice-of-law provision under Maryland law is when the application of the law of the chosen state is contrary to a fundamental policy of a state which both (i) "has a materially greater interest than the chosen state in the determination of the particular issue[]", and (ii) "would be the state of applicable law in the absence of an effective choice of law by the parties." *Choice Hotels Int'l, Inc.*, 91 F. Appx. at 815 (citing *General Ins. Co. of Am.*, 118 Md. App. at 137).

While Plaintiff argues that New York law violates a fundamental policy of Maryland, he makes no real argument that Maryland has either a greater interest in the determination of the issue of the enforceability of the Arbitration Agreement (beyond a cursory mention of the case's so-called "strong ties to [Maryland]," Opp'n 10), or that Maryland's law would be the applicable state law if the New York choice-of-law provision was absent or unenforceable.

If there is no choice-of-law provision in a contract—or an existing provision is unenforceable—Maryland follows the rule of *lex loci contractus*, which requires a court to apply the law of the jurisdiction where the contract was made "when determining the construction,

---

[4] Therefore, Plaintiff's statement that the Terms "inserted 'New York law' as governing law in a form contract offered nationwide" bolsters rather than defeats the argument that there is a reasonable basis for the New York choice-of-law provision. Opp'n at 9.

validity, enforceability, or interpretation of a contract." *Brownlee v. Liberty Mut. Fire Ins. Co.*, 456 Md. 579, 585 (2017) (citation omitted); *see also Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (1992). For choice-of-law purposes, a contract is made "where the last act necessary to make the contract binding occurs." *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672 (1997) (citation omitted). In this case, this "last act" occurred in the State of Alabama, where Plaintiff resides, *see* Compl. ¶ 5, and agreed to The Class Action Guide's Terms. *See Gordon v. Zeroed-In Techs., LLC*, No. 23-3284-BAH, 2025 U.S. Dist. LEXIS 58032, at *22 (D. Md. Mar. 26, 2025) (finding that the state law "where [the plaintiffs] lived and worked" would apply under the doctrine of *lex loci contractus* to determine the formation and validity of the arbitration agreements at issue when plaintiffs executed the clickwrap agreements remotely).

And while Maryland does recognize a limited exception to *lex loci contractus* when application of a foreign jurisdiction's law would be contrary to a strong public policy in the state, "the party seeking to apply Maryland law on public policy grounds bears a 'heavy burden' [of persuasion]." *Black v. Leatherwood Motor Coach Corp.*, 92 Md. App. 27, 43-44 (1992) (declining to apply the public policy exception under the related *lex loci delicti* doctrine).[5] The public policy must be "very strong and not merely a situation in which Maryland law is different from the law of another jurisdiction." *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390 (1988); *see also United States v. Lifecycle Constr. Servs., LLC*, Civ. No.: MJM-23-1118, 2024 U.S. Dist. LEXIS 112241, at *10 (D. Md. June 26, 2024) ("Maryland courts 'have struck down contractual provisions contrary to a fundamental public policy in cases where the related statute contains an express statement that the law is a fundamental public policy, an anti-waiver provision, or similar language of clear legislative intent.'") (citation omitted). Plaintiff's

---

[5] Maryland's public-policy-exception analysis is the same under both the *lex loci contractus* and *lex loci delicti* doctrines. *See Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 630 (2007).

conclusory statement that Maryland's requirement "that an arbitration provision rest on genuine mutual consideration and not operate as an illusory promise . . . reflects a core principle of Maryland contract law" plainly does not meet this heavy burden. Opp'n at 10.

Plaintiff cites to no statutory provision or case law indicating that the holding set forth in *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 378 Md. 139 (2003), voiding an arbitration agreement where there was a unilateral modification provision, represents a fundamental public policy of the State of Maryland sufficient to overcome the doctrine of *lex loci contractus* – presumably because none exist. *See* Opp'n at 10. In *Bethlehem Steel Corp. v. G.C. Zarnas & Co.*, where the public policy exception was applied, the court did so because the General Assembly of Maryland "specifically addressed" the type of contractual clause at issue, and "unequivocally told the Maryland judiciary that such a clause 'is void and unenforceable.'" 304 Md. 183, 190 (1985). In contrast, Plaintiff here has failed to identify "any compelling reason that application of [New York or Alabama] law . . . would be ***offensive*** to public policy." *Baker's Express, LLC v. Arrowpoint Capital Corp.*, Civil Action No. ELH-10-2508, 2012 U.S. Dist. LEXIS 135418, at *41 (D. Md. Sep. 20, 2012) (emphasis added).

### 3. The Arbitration Agreement is Enforceable Under New York Law; Alabama Law Reserves Illusory Issues for the Arbitrator.

Regardless of whether New York or Alabama law applies, Plaintiff mistakenly argues that the unilateral-modification provision renders the entire Arbitration Agreement illusory and therefore unenforceable. Under New York law, a unilateral-modification provision does not automatically render an agreement illusory, as the discretionary power to modify an agreement "carries with it the duty to exercise that power in good faith and fairly." *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106 (E.D.N.Y. March 23, 2015) (citation omitted); *see also Roitman v. T-Mobile USA Inc.*, 23-CV-6159 (ENV) (LKE), 2025 U.S. Dist. LEXIS 144288, at *26-27

(E.D.N.Y. July 28, 2025) ("Under New York law, a contract is not illusory merely because its terms give discretion to one party to the contract. . . as every contract encompasses the implied duty of good faith and fair dealing." (quoting *Lebowitz v. Dow Jones & Co.*, 508 Fed. Appx. 83, 84-85 (2d Cir. 2013))). Therefore, before finding a contract illusory, New York courts will consider whether "a defendant's behavior is reasonable." *Lebowitz*, 508 Fed. Appx. at 84-85.

Here, like in *Bassett*, The Class Action Guide "had an express obligation to provide Plaintiff with indirect notice of any changes, by posting such changes on its website," supporting a finding that "a reasonably prudent user in Plaintiff's position would have had notice that he was being bound by the [Terms], including the arbitration provision." 93 F. Supp. 3d at 107-108. The Class Action Guide's Terms also state that it is "**governed by** and construed in accordance with the laws of the State of New York," Beichler Decl. ¶ 26(d), which constrains The Class Action Guide's discretion to change contractual terms through New York's implied covenant of good faith. *See, e.g.*, *Valle v. ATM Nat'l, LLC*, 14-cv-7993 (KBF), 2015 U.S. Dist. LEXIS 11788, at *15 (S.D.N.Y. Jan. 30, 2015). Finally, Plaintiff correctly does not allege that The Class Action Guide modified its Terms in any manner that violated its duty of good faith and fair dealing – though even if modifications were made, they would not inherently render the Plaintiff's agreement to the Terms illusory. *See Bassett*, 93 F. Supp. 3d at 107 ("Although [the defendant] did modify the Terms of Service on at least one occasion, that modification was reasonable under the circumstances, and consistent with [its] duty to act in good faith."). In sum, Plaintiff's bare allegation that the existence of a unilateral-modification provision in The Class Action Guide's Terms render them illusory is insufficient under New York law, as he makes no argument that The Class Action Guide engaged in unreasonable behavior.

If The Class Action Guide's choice-of-law provision is unenforceable, inapplicable, or overridden by Maryland's *lex loci contractus* doctrine, and this Court's analysis is instead governed by Alabama law, it need not continue any further. Under Alabama law, the analysis of whether an arbitration agreement (and/or the underlying contract) is illusory is left to the arbitrator. *See Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333, 1339-40 (M.D. Ala. 2003) (holding that plaintiff's argument that a unilateral-amendment provision rendered an agreement illusory related only to the "substantive content of the amendment provision, and [did] not challenge either the Plaintiff's assent to the contract or the substance of the arbitration clause[,]" and was therefore an argument for an arbitrator to resolve); *see also Battels v. Sears Nat'l Bank*, 365 F. Supp. 2d 1205, 1215 (M.D. Ala. 2005). Therefore, even if this Court determines that Alabama law is applicable to the resolution of Plaintiff's illusoriness argument, it should still grant AlertzPro's Motion and permit the arbitrator to resolve that issue.

## V.  Conclusion

AlertzPro's Motion to Stay and Compel Arbitration should be granted. Plaintiff's perfunctory denial of being the person who accurately provided all of his personal information and consented to The Class Action Guide Terms fails to meet his burden of substantiating that "not me" claim.  And Plaintiff's attack on the enforceability of The Class Action Guide's Terms misses the mark. That New York-based company was free to choose New York law, under which AlertzPro can enforce those Terms.

Dated: October 24, 2025						Respectfully submitted,

								ALERTZPRO, LLC

								By Counsel

								/s/ Joseph P. Bowser
								ROTH JACKSON
								1519 Summit Ave., Suite 102
								Richmond, VA 23230
								Telephone:	(804) 441-8701
								Facsimile:	(804) 441-8438
								Email:	jbowser@rothjackson.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of October 2025, a copy of the foregoing document was served via this Court's Electronic Case Filing (ECF) system upon:

John Thomas McGowan, Jr.
Kinner & McGowan PLLC
413 E Capitol St SE
Washington, DC 20003
Phone: 901-351-6776
Email: jtmcgowan@gmail.com

Anthony I. Paronich
Paronich Law PC
350 Lincoln St. Ste. 2400
Hingham, MA 02043
Phone: 615-485-0018
Email: anthony@paronichlaw.com

*Counsel for Plaintiff*

                                                /s/ *Joseph P. Bowser*
                                                Joseph P. Bowser