IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MONTY LEE HIGHTOWER,                 :
individually and on behalf of
all others similarly situated        :

        v.                           : Civil Action No. DKC 25-2312

                                     :

ALERTZPRO LLC

                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer law case is the motion to stay and compel arbitration filed by Defendant AlertzPro, LLC ("Defendant" or "AlertzPro"). (ECF No. 15). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to stay and compel arbitration will be denied, albeit without prejudice.

**I.   Background[1]**

Plaintiff Monty Lee Hightower ("Plaintiff") alleges he received at least twenty-four text messages from "short code 74473" to his cell phone between April 3, 2025, and July 5, 2025. (ECF No. 4 ¶ 15). These messages, which contained various advertisements and marketing links, were sent by Defendant. (*Id.* ¶¶ 17, 19). Plaintiff states he never consented to the messages

---

[1] All facts are alleged in the complaint or included in documents supporting the motion to compel arbitration briefing.

and "did not request information or promotional materials from Defendant." (*Id*. ¶¶ 20-21).  Plaintiff alleges that these messages were sent to his cell phone "thirty-one or more days" after he registered his cell phone number with the national Do Not Call Registry, and Defendant knew or should have known that his number was on the Registry.  (*Id*. ¶¶ 17, 23).

Defendant does not dispute that it sent text messages to Plaintiff.  In a declaration submitted with its motion to compel arbitration, Defendant's Head of Operations and Business Development, Blaine Beichler, states that Plaintiff consented to the text messages when he signed up for a website called The Class Action Guide.  (ECF No. 15-2 ¶¶ 1, 2, 28).  The Class Action Guide "helps consumers gain information about and access to class action settlements they are potentially entitled to, among other financial and savings opportunities, and connects them with other available financial resources through their third-party marketing partners like AlertzPro."  (*Id*. ¶ 4).  Defendant "partners with The Class Action Guide to receive contact information of consumers who consented to receive information and offers from the Class Action Guide and its third-party marketing partners like AlertzPro."  (*Id*. ¶ 3).

Mr. Beichler states that Plaintiff visited The Class Action Guide's website on April 21, 2025, and signed up for an account.

2

(*Id.* ¶ 29).   Signing up for an account necessarily includes agreeing to the Terms and Conditions, which require arbitration. (*Id.*).   Mr. Beichler states that Plaintiff provided his personal information and then "clicked the box next to the phrase 'I consent to be texted as described above,' which reiterated his Agreement to the Terms, and then clicked the 'Continue' button, thereby consenting to receive text messages from, among others, 'Unified Marketing Partner LLC or one of its subsidiaries,' including AlertzPro."   (*Id.* ¶ 31).   Defendant sent text messages to Plaintiff's phone number the same day he signed up for The Class Action Guide and consented to the texts, "beginning with a welcome message on the same morning of his opt-in on April 21, 2025." (*Id.* ¶ 33).   Defendant continued to send periodic text messages, "including after [Plaintiff] interacted with various links included in the text messages, which [Defendant's] data shows that he clicked on and viewed on, among other dates, April 24, 2025, April 28, 2025, June 3, 2025, June 17, 2025 and most recently July 17, 2025."   (*Id.* ¶ 34).   Mr. Beichler states that Defendant's messages included reminders of how to opt out of its campaigns, but Plaintiff did not opt out.  (*Id.* ¶ 35).

In what purports to be his own declaration attached to his opposition to Defendant's motion, Plaintiff states "[to] the best of my knowledge and after reviewing my browser history, I have

never heard of, visited, or used the website 'theclassactionguide.com.'"[2] (ECF No. 20-1 ¶ 4). Plaintiff further states he has never entered his personal information on the website and has "never agreed to any terms, conditions, or arbitration agreement on theclassactionguide.com or any website associated with Defendant AlertzPro." (*Id*. ¶¶ 5-6).

Plaintiff filed a putative class action complaint in this court on July 16, 2025, (ECF No. 1), followed by the operative amended complaint on July 18, 2025, (ECF No. 4). The amended complaint seeks to bring a class action based on violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5). (*Id*. at 5-8). Defendant filed a motion to stay and compel arbitration on September 5, 2025. (ECF No. 15). Plaintiff filed an opposition to the motion on September 30, 2025, (ECF No. 20), and Defendant filed a reply on October 24, 2025, (ECF No. 25).

## II.  Standard of Review

Courts in this circuit consider motions to compel arbitration under Fed.R.Civ.P. 12(b)(3), which governs motions to dismiss for improper venue. Another court in this district recently described the standard for Fed.R.Civ.P. 12(b)(3) motions in the arbitration context:

---

[2] "theclassactionguide.com" is the URL for The Class Action Guide. (ECF No. 15-2 ¶ 11).

> As the [United States Court of Appeals for the] Fourth Circuit has explained, "arbitration clauses are enforced in court by way of Federal Rule of Civil Procedure 12(b)(3) motions to dismiss for improper venue. In considering such motions, courts may examine evidence outside the pleadings— including, as relevant here, the contract containing the applicable arbitration clause." *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 594 n.2 (4th Cir. 2023). Further, "[a] plaintiff is obliged [ ] to make only a prima facie showing of proper venue in order to survive a motion to dismiss. In assessing whether there has been a prima facie venue showing, we view the facts in the light most favorable to the plaintiff." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012) (citations omitted).

*David v. Tesla*, 720 F.Supp.3d 390, 395 (D.Md. 2024). As indicated by the fact that courts may consider evidence outside the pleadings in this context, "[m]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Ford v. Genesis Fin. Sols., Inc.*, 726 F.Supp.3d 441, 448 (D.Md. 2024) (quoting *PC Constr. Co. v. City of Salisbury*, 871 F.Supp.2d 475, 477–78 (D.Md. 2012)), *aff'd*, No. 24-1341, 2025 WL 1540933 (4th Cir. May 30, 2025). Treating the motion to compel arbitration under the summary judgment standard is proper when the formation of an arbitration agreement is disputed. *Id.; see also Reed v. LTN Glob. Commc'ns, Inc.*, No. 24-cv-03649-JRR, 2025 WL 2653196, at *3 (D.Md. Sep. 16, 2025) (noting that arbitration clauses are enforced by way of Fed.R.Civ.P. 12(b)(3) motions to

5

dismiss, but "where there are issues as to the validity of the agreement to arbitrate, courts analyze such motions under a summary judgment standard").

Fed.R.Civ.P. 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In determining whether a moving party has made that showing, a court must consider the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In applying the summary judgment standard in the context of compelling arbitration, "the burden is on the defendant to establish the existence of a binding contract to arbitrate the dispute."  *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 202 (4th Cir. 2025) (citation modified) (quoting *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021)).

6

**III. Analysis**

Plaintiff denies having *any* relationship with Defendant or a written agreement providing for arbitration.  (*See* ECF No. 20, at 3 (Plaintiff "had no knowledge of, never agreed to, and would never agree to, arbitrate his claims against AlertzPro.")).  "Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate."  *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997).

Before determining if arbitration can be compelled, the court must decide whether a valid arbitration provision exists.  Section 4 of the Federal Arbitration Act ("FAA") "requires that the district court—rather than an arbitrator—decide whether the parties have formed an agreement to arbitrate."  *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).

Defendant seeks to compel arbitration based on Plaintiff allegedly signing up for The Class Action Guide and consenting to the text messages.  (ECF No. 15-1, at 1).

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect

7

> or refusal of the [litigant] to arbitrate the dispute."

*Adkins v. Lab. Ready, Inc.,* 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).  Plaintiff contests the second element, saying he does not have a written agreement with The Class Action Guide nor, by extension, Defendant.

The Trial Provision of the FAA provides "if the 'making of the arbitration agreement . . . be in issue,' then 'the court shall proceed summarily to the trial thereof.'"  *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 235 (quoting 9 U.S.C. § 4).  To proceed to trial, "the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support."  *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015).

> To decide whether "sufficient facts" support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test. *See* [*id.*]; *see also* Fed. R. Civ. P. 56(a).  In applying that standard, the court is entitled to consider materials other than the complaint and its supporting documents. *See Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 86 (4th Cir. 2016) (evaluating materials outside of complaint in assessing motion to compel arbitration).  If the record reveals a genuine dispute of material fact "regarding the existence of an agreement to arbitrate," *see Chorley Enters., Inc.*, 807 F.3d at 564, the "court shall proceed summarily" and conduct a

trial on the motion to compel arbitration, *see*
9 U.S.C. § 4.

*Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234.  Submissions from both parties show that the "making of the arbitration agreement" is "in issue."

Defendant submitted a declaration stating that Plaintiff signed up for The Class Action Guide.  The declaration describes the process by which AlertzPro receives opt-in information from The Class Action Guide, the user flow for individuals signing up for The Class Action Guide and consenting to text messages from its marketing partners, and when and how Plaintiff allegedly input his information.   (ECF No. 15-2, at 1-11).   While Plaintiff acknowledges that the personal information AlertzPro received about him is correct, he states he never put his personal information into the website and alludes that "a website scraper or bot" may have done so.  (ECF No. 20, at 7).  Plaintiff argues that Defendant has failed to show that "[Plaintiff] *himself* visited the website in question or submitted any information at all." (*Id*.).  Plaintiff seems to argue that "personally review[ing] the consent data" and "firsthand knowledge of whether [Plaintiff] consented" are necessary for Defendant to compel arbitration. (*Id.* at 2).   This is inaccurate.   The Fourth Circuit has previously found that a declaration from a company executive sufficiently showed "whether and when [plaintiff] enrolled in [defendant's

product], and if so, what terms of use, if any, did he agree to."
*See Austin*, 148 F.4th at 204.  Defendant has put forth evidence
supporting its argument that Plaintiff consented to the text
messages from AlertzPro by signing up for The Class Action Guide.

Plaintiff's denial, however, is sufficient to create a
genuine dispute of material fact about whether there is an
arbitration agreement between the parties.  Plaintiff submitted a
declaration[3] asserting that he never signed up for The Class Action
Guide, provided his information, or consented to an agreement with
either The Class Action Guide or AlertzPro.  (*See* ECF No. 20-1, at
1-2 ("I have never agreed to any terms, conditions, or arbitration
agreement on theclassactionguide.com or any website associated
with Defendant AlertzPro.")).   Defendant counters that the
"conclusory declaration unsupported by any corroborating evidence"
cannot overcome the evidence it has provided, (ECF No. 25, at 3),
and points to cases where the plaintiffs provided additional
evidence disputing the existence of an agreement, (*Id*. at 3-5).

---

[3] As Defendant noted, Plaintiff's declaration "does not appear
to be signed in accordance with any of the three options" provided
in the court's Electronic Case Filing Policies and Procedure
Manual.  (ECF No. 25, at 4).  While this court requires that a
non-attorney sign with either his or her handwritten signature or
a digital "/s/," ECF Policies and Procedures, at 40 (Sep. 2025),
https://www.mdd.uscourts.gov/sites/mdd/files/CMECFProceduresManu
al-Sept2025_0.pdf, Plaintiff seems to have pasted a very small
picture on the signature line, (ECF No. 20-1, at 2).  Going
forward, all parties will be expected to adhere to procedural
requirements.

The standard at summary judgment, however, is whether there is a dispute of material fact; the court's role at this juncture is not to weigh the evidence from each party.  Plaintiff has made "an unequivocal denial that an arbitration agreement exists," *Chorley Enters., Inc.*, 807 F.3d at 564, and submitted a declaration in support.  While Defendant points out that the declaration is conclusory, "even a self-serving and uncorroborated affidavit, if 'based on personal knowledge or firsthand experience, . . . can be evidence of disputed material facts.'" *Alston v. Navy Fed. Credit Union*, No. 21-cv-00040-GJH, 2021 WL 4478698, at *9 (D.Md. Sep. 30, 2021) (quoting *Lovett v. Cracker Barrell Old Country Store, Inc.*, 700 F.App'x 209, 212 (4th Cir. 2017)).

Courts confronted with a similar unequivocal denial have ordered limited discovery before determining if arbitration is required.  *See id.* ("[T]his Court . . . declines to compel arbitration at this time but concludes that 'limited discovery is warranted in this case before the Court can determine whether arbitration is required.'" (citation omitted)); *Crumpler v. Midland Credit Mgmt., Inc.*, No. 13-cv-1953, 2013 WL 6576318, at *4 (E.D.Pa. Dec. 13, 2013) (denying a motion to compel arbitration without prejudice and granting limited discovery where the plaintiff denied receiving the terms, but explaining that "a hearing or trial may not be necessary if [the defendant] can

11

produce documentation related to [the plaintiff]'s actual or constructive knowledge that he was bound by the Terms and Conditions"); *cf. Roach v. Navient Sols., Inc.*, 165 F.Supp.3d 343, 349 (D.Md. 2015) ("Had Plaintiff presented . . . a declaration, or some other admissible evidence unequivocally showing that she disputes the existence or validity of her [agreement], the Court might have been inclined to defer Defendant's Motion to Compel and grant limited discovery on the threshold question of arbitrability."). The court must address the threshold issue of arbitrability before proceeding to the remaining questions. With the benefit of limited discovery, Defendant could refile a motion to compel arbitration, or the parties can continue to the trial contemplated in 9 U.S.C. § 4. The court will grant limited discovery restricted to the question of who signed up for The Class Action Guide using Plaintiff's personal information.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to stay and compel arbitration will be denied. A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge

12